## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ELIZABETH MOELLER, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE WEEK PUBLICATIONS, INC., <br><br> Defendant. | Case No. 22-cv-10666-TLL-PTM <br><br> Hon. Thomas L. Ludington <br><br> Mag. Judge Patricia T. Morris |

## PLAINTIFF'S UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

The undersigned counsel certifies that counsel communicated with opposing counsel, via email on November 16, 2022, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; Defendant's counsel does not oppose this motion and the relief requested herein.

For the reasons set forth in Plaintiff's Brief in Support of her Unopposed Motion for Preliminary Approval of Class Action Settlement, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP, and E. Powell Miller of The Miller Law Firm, P.C. as Class Counsel; (4) appoint Elizabeth Moeller as the Class Representative for the Settlement Class; and (5) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice") and direct distribution of the Proposed Notice.[1]

---

[1] The Settlement Agreement and its exhibits are included in the accompanying Supporting Brief.

Dated: November 21, 2022

Respectfully submitted,

By: */s/ E. Powell Miller*
One of Plaintiff's Attorneys

E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200
epm@millerlawpc.com
ssa@millerlawpc.com

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Philip L. Fraietta (P85228)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163

Frank S. Hedin
fhedin@hedinhall.com
Arun G. Ravindran
aravindran@hedinhall.com
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801

*Proposed Class Counsel*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ELIZABETH MOELLER, individually and on behalf of all others similarly situated,<br><br>                   Plaintiff,<br><br>        v.<br><br>THE WEEK PUBLICATIONS, INC.,<br><br>                   Defendant. | Case No. 22-cv-10666-TLL-PTM<br><br>Hon. Thomas L. Ludington<br><br>Mag. Judge Patricia T. Morris |

## BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

## STATEMENT OF ISSUES PRESENTED

1.     Does the proposed Settlement Class meet Fed. R. Civ. P. 23's requirements for class certification for settlement purposes?

**Plaintiff's Answer: Yes.**

2.     Should Plaintiff's Counsel be appointed as Class Counsel?

**Plaintiff's Answer: Yes.**

3.     Should Plaintiff Elizabeth Moeller be appointed as the Class Representative for the Settlement Class?

**Plaintiff's Answer: Yes.**

4.     Based on an initial evaluation, is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant notice to the proposed Settlement Class?

**Plaintiff's Answer: Yes.**

5.     Does the Notice Plan satisfy the requirements of Fed. R. Civ. P. 23 and Due Process?

**Plaintiff's Answer: Yes.**

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1884 (2013)

*Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015)

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED.................................................................i

CONTROLLING AND MOST APPROPRIATE AUTHORITIES........................ ii

TABLE OF AUTHORITIES ................................................................v

I.      INTRODUCTION.......................................................................1

II.     BACKGROUND..........................................................................3

        A.      Michigan's Preservation of Personal Privacy Act.....................3

        B.      Pre-Filing Investigation .............................................................4

        C.      History of the Litigation and Settlement Negotiations...............5

III.    KEY TERMS OF THE SETTLEMENT................................................6

IV.     THE PROPOSED CLASS IS APPROPRIATE FOR
        CERTIFICATION FOR SETTLEMENT PURPOSES .......................8

        A.      The Numerosity Requirement Is Satisfied..................................9

        B.      The Commonality Requirement Is Satisfied................................9

        C.      The Typicality Requirement Is Satisfied ..................................10

        D.      The Adequacy Requirement Is Satisfied ..................................11

        E.      The Proposed Settlement Class Meets Rule 23(b)(3)
                Requirements .............................................................................13

                1.      Common Questions Predominate ....................................13

                2.      A Class Action Is a Superior Mechanism.......................14

V.      PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS
        COUNSEL…………………….. ...........................................................16

VI.   PRELIMINARY SETTLEMENT APPROVAL IS APPROPRIATE . 16

A.   The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval................................................................................17

B.   The Sixth Circuit's *UAW* Factors Weight in Favor of Preliminary Approval...............................................................19

  1.   There is No Risk of Fraud of Collusion .........................19

  2.   Litigation Through Trial Would be Complex, Costly, and Long.............................................................................19

  3.   Discovery Has Allowed the Parties to Resolve the Case Responsibly................................................................20

  4.   Plaintiff Would Face Real Risks if the Case Proceeded 21

  5.   Proposed Class Counsel and Class Representative Support the Settlement...................................................21

  6.   The Reaction of Absent Class Members ........................22

  7.   The Settlement Serves the Public Interest.....................22

VII.   THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE......................................................................23

VIII.  CONCLUSION ..................................................................25

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ......................................................................... 8, 14, 15
*Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*,
   133 S. Ct. 1184 (2013) ................................................................................8
*Beattie v. CenturyTel, Inc.*,
   511 F.3d 554 (6th Cir. 2007)......................................................................11
*Boelter v. Hearst Commc'ns, Inc.*,
   192 F. Supp. 3d 427 (S.D.N.Y. 2016)..........................................................3
*Calloway v. Caraco Pharm. Labs., Ltd.*,
   287 F.R.D. 402 (E.D. Mich. 2012) .............................................................15
*Coulter-Owens v. Rodale, Inc.*,
   No. 14-cv-12688 (E.D. Mich.)......................................................................2
*Coulter-Owens v. Time, Inc.*,
   308 F.R.D 524 (E.D. Mich. 2015) ........................................................ passim
*Curry v. SBC Commc'ns, Inc.*,
   250 F.R.D 301 (E.D. Mich. 2008) ................................................................9
*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. Feb. 25, 2014) ..................................................12
*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)............................................................................. 23, 24
*Fox v. Cty. of Saginaw*,
   2020 WL 6118487 (E.D. Mich. Oct. 16, 2020) ..........................................12
*Gilkey v. Cent. Clearing Co.*,
   202 F.R.D. 515 (E.D. Mich. 2001) .............................................................10
*Horton v. GameStop, Corp.*,
   380 F. Supp. 3d 679 (W.D. Mich. 2018) ......................................................4
*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996)..................................................................9, 10
*In re Cardizem CD Antitrust Litig.*,
   200 F.R.D. 326 (E.D. Mich. 2001) .............................................................15
*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) .............................................................22
*In re Packaged Ice Antitrust Litig.*,
   2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)...................................... 16, 17
*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013)................................................................ 8, 9, 14

*Int'l Union v. Ford Motor Co.*,
   2006 WL 1984363 (E.D. Mich. July 13, 2006) ....................................................11

*Kinder v. Meredith Corp.*,
   2016 WL 454441 (E.D. Mich. Feb. 5, 2016)....................................................7, 11

*Leonhardt v. AvrinMeritor, Inc.*,
   581 F. Supp. 2d 818 (E.D. Mich. 2008)............................................................19

*Luczak v. Nat'l Beverage Corp.*,
   2018 WL 9847842 (S.D. Fla. Oct. 12, 2018)....................................................12

*Machesney v. Lar-Bev of Howell, Inc.*,
   317 F.R.D. 47 (E.D. Mich. 2016) ......................................................................14

*Merenda v. VHS of Mich., Inc.*,
   296 F.R.D. 528 (E.D. Mich. 2013) ...................................................................13

*Moeller v. Am. Media, Inc.*,
   No. 16-cv-11367 (E.D. Mich.)............................................................................2

*Parker v. Time Warner Ent. Co., L.P.*,
   239 F.R.D. 318 (E.D.N.Y. 2007) ......................................................................10

*Perlin v. Time, Inc.*,
   No. 16-cv-10635 (E.D. Mich.)............................................................................2

*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
   501 F.3d 592 (6th Cir. 2007)............................................................................14

*Sheick v. Auto. Component Carrier, LLC*,
   2010 WL 3070130 (E.D. Mich. Aug. 2, 2010)..................................................19

*UAW v. Gen. Motors Corp.*,
   2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ................................................19

*UAW v. Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007)................................................................... passim

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ................................................................................9, 13

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2012)............................................................................15

## Statutes

M.C.L. § 445.1712 ....................................................................................................5
M.C.L. § 445.1715 ....................................................................................................5
28 U.S.C. § 1715 .....................................................................................................25

## Rules

Fed. R. Civ. P. 23(a).............................................................................................8, 14
Fed. R. Civ. P. 23(a)(1)...............................................................................................9
Fed. R. Civ. P. 23(a)(2)...............................................................................................9
Fed. R. Civ. P. 23(a)(3).............................................................................................10
Fed. R. Civ. P. 23(a)(4).............................................................................................11
Fed. R. Civ. P. 23(b)(3).......................................................................................passim
Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................23, 24
Fed. R. Civ. P. 23(e)(1)(B) ........................................................................................24
Fed. R. Civ. P. 23(e)(2)........................................................................................17, 18
Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv) ...........................................................................16
Fed. R. Civ. P. 23(g)(1)(B)........................................................................................16

## Other Authorities

*Manual for Complex Litigation* § 21.632 (4th ed. 2004).........................................17
*Newberg on Class Actions* § 11.41 (4th ed. 2002) ..................................................16
*Newberg on Class Actions* § 11.41 (4th ed. 2002) ..................................................24

## I. INTRODUCTION

The Settlement negotiated here by Plaintiff and proposed Class Counsel ("Class Counsel"), brought under the Michigan Preservation of Personal Privacy Act (the "PPPA"),[1] represents an excellent result for the proposed Settlement Class (the "SC"). Pursuant to the Settlement Agreement (the "SA"), Defendant has agreed to pay $5,082,870 to establish an all-cash, non-reversionary Settlement Fund ("SF"), equating to a per-Class Member aggregate recovery of $390, from which every Settlement Class Member ("SCM") (except for those who request for exclusion from the Settlement) will <u>automatically</u> receive (i.e., without having to file a claim form) a *pro rata* cash payment of approximately $248. Thus, if approved, the Settlement will provide meaningful relief to all SCMs, in a timely and streamlined manner.

The Settlement is the product of efficiently-prosecuted litigation, extensive arm's-length negotiations between the Parties (a full-day mediation with The Hon. Gerald E. Rosen (Ret.)—former Chief Judge of the E.D. of Michigan, now a mediator at JAMS (Detroit)). The Settlement outperforms all but one prior PPPA settlement in terms of recovery per class member.[2] Moreover, unlike those settlements, the Settlement here does not require SCMs to submit claim forms, and

---

[1] The version of the PPPA at issue in this case is found at H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989).

[2] In *Kain v. The Economist Newspaper NA, Inc.*, No. 21-cv-11807 (E.D. Mich.), the PPPA settlement provided an aggregate recovery of roughly $412 per class member.

instead provides <u>automatic</u> cash payments to all 13,033 SCMs (except for any who choose to exclude themselves); thus, upon final approval, each SCM will receive a cash payment of approximately $248, far exceeding the per-class member recovery in previous PPPA settlements. The automatic relief secured by the Settlement— (without even the benefit of Defendant insurance coverage—provides fair, reasonable, and adequate relief to the SC, and its terms and notice procedures readily satisfy due process and the procedural requisites of Rule 23.

Moreover, the Settlement compares very favorably with settlements in similar cases. *See, e.g.*, *Perlin v. Time, Inc.* (No. 2:16-cv-10635 ECF No. 51, PageID.778-89) (E.D. Mich.) (approving class settlement to pay between $25-50 per claimant); *Coulter-Owens v. Rodale, Inc.* (No. 2:14-cv-12688 ECF No. 54, PageID.852-66) (E.D. Mich.) (approving class settlement paying roughly $42 per claimant); *Moeller v. Am. Media, Inc.* (No. 2:16-cv-11367 ECF No. 42, PageID.891-99) (E.D. Mich.) (also approving PPPA class settlement paying roughly $100 per claimant).

Accordingly, the Court should have no hesitation granting preliminary approval here, and Plaintiff respectfully requests that the Court (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the Settlement Class under FRCP 23(b)(3); (3) appoint Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP, and E. Powell Miller of The Miller Law Firm, P.C. as Class Counsel; (4) appoint

Elizabeth Moeller as the Class Representative for the Settlement Class; and (5) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement ("Proposed Notice"),[3] and direct distribution of the Proposed Notice.

## II. BACKGROUND

### A. Michigan's Preservation of Personal Privacy Act

The Michigan legislature passed the PPPA to preserve personal "privacy with respect to the purchase, rental, or borrowing of written materials." Sec. Am. Compl. (ECF No. 15) ("SAC"). As such, the PPPA (as it existed until 7/30/16) provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712. It authorizes civil actions and provides for statutory damages of $5,000, plus costs and reasonable attorney fees. *See* M.C.L. § 445.1715.

In May 2016, the Michigan legislature amended the PPPA effective 7/31/16, but this does not apply retroactively to claims accruing prior to the effective date. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 439-41 (S.D.N.Y. 2016) ("[T]he amendment to the [PPPA] does not apply to Plaintiffs' claims, and the Court will assess the sufficiency of those claims under the law as it was when Plaintiffs'

---

[3] These are attached as Exhibits A-C to the SA.

claims accrued.") (citations omitted herein unless noted). Because the claims alleged herein accrued, and thus vested, prior to the 7/31/16 effective date of the amended version of the PPPA, the pre-amendment version of the PPPA applies in this case. *See Horton v. GameStop, Corp.*, 380 F. Supp. 3d 679, 683 (W.D. Mich. 2018).

## B. Pre-Filing Investigation

Plaintiff's counsel conducted pre-filing investigations concerning every aspect of the factual and legal issues here—these extensive efforts included:

- Researching the nature of Defendant's business, its practices of selling *The Week*, consumer-privacy policies, and public statements concerning the same;

- Interviewing numerous individuals in Michigan who subscribed to *The Week* in 2015 and 2016, including about their process of purchasing a subscription and any disclosures they received or agreed to during the purchase process;

- Researching and analyzing Defendant's list rental and other disclosure practices, including data cards and other public information available online concerning the practices during the relevant 2015-2016 timeframe;

- Analyzing versions of Defendant's Privacy Policy, Terms of Service, and other public documents on its websites during the relevant time period;

- Researching the relevant law and assessing the merits of a potential PPPA claim against Defendant and defenses that Defendant might assert thereto;

- Investigating Defendant's financial condition to assess the likelihood of ultimately recovering a class-wide statutory damages award from it; and

- Reviewing caselaw and statutes concerning the applicable limitation period for a PPPA claim, and analyzing the arguments regarding a six-year period.

*See* Declaration of Philip L. Fraietta in Support of Plaintiff's Unopposed Motion For Preliminary Approval ("Decl.") (Exhibit A) ¶ 6. As a result, Plaintiff's counsel

developed a viable theory of liability for a PPPA claim against Defendant and prepared a thorough Complaint, FAC, and SAC against Defendant. *Id.* ¶ 7.

## C. History of the Litigation and Settlement Negotiations

On 3/28/22, former plaintiff Colin Custard filed his Class Action Complaint against Defendant The Week Publications, Inc., publisher of *The Week* magazine. Compl. ECF No. 1, ¶ 10. Plaintiff alleges that before 7/30/16, Defendant disclosed information related to its customers' magazine subscription histories and personal reading habits without their consent in violation of the PPPA. *Id.* ¶¶ 1-2, 5-8, 41-48. On 8/5/22, Custard filed his FAC, adding Frederick Vogt and Ella Norman as named plaintiffs. ECF No. 11. On 11/3/22, Plaintiff Moeller filed the SAC, making the same allegations and becoming the sole named plaintiff in the action. ECF No. 15.[4]

From the start, the Parties engaged in direct communication, and per Fed. R. Civ. P. 26, discussed early resolution. *See* Decl. ¶ 8. To that end, before Defendant answered the FAC, the Parties agreed to engage in mediation before Judge Rosen. *Id.* ¶ 9. Prior to mediation, the Parties exchanged informal discovery—on issues such as size and scope of the putative class (roughly 13,033 persons)—and exchanged lengthy mediation briefs concerning sufficiency of the pleadings and the applicable statute of limitations. *Id.* ¶ 11. This is similar information to that produced in formal

---

[4] Pursuant to FRCP 23(e)(3), Plaintiff notes that Custard, Vogt, and Norman – not members of the SC – settled their claims against Defendant on an individual basis.

discovery related to class certification and summary judgment, so the Parties had information sufficient to assess the viability of their claims and defenses. *Id.* ¶ 12.

The mediation took place on 10/24/22, lasting the entire day. The Parties reached agreement on all material terms of a class action settlement and executed a term sheet. *Id.* ¶ 13. In the weeks following, the Parties negotiated and finalized the full-form SA, attached to the Decl. as Ex. 1. *Id.* ¶ 14.

## III. KEY TERMS OF THE SETTLEMENT

**Class Definition.** The "Settlement Class" is:

> All Persons who purchased a subscription directly from the publisher of *The Week* for delivery to a Michigan street address, and who subscribed to such publication between December 17, 2015, and July 31, 2016.[5]

SA ¶ 1.32. Based on Defendant's records, there are 13,033 SCMs. *Id.*

**Monetary Relief.** Defendant shall establish a $5,082,870 non-reversionary SF from which all SCMs who do not exclude themselves shall automatically receive a *pro rata* cash payment of roughly $248 after payment of notice, administrative expenses, attorneys fees, and a service award to the proposed Class Representative. SA ¶¶ 1.34, 2.1. No portion of the SF will revert back to Defendant. *Id.* ¶ 2.1(h).

**Release.** In exchange for the $5,082,870 cash payment, Defendant (and all "Released Parties" — defined in SA ¶ 1.28) will receive a full release of all claims

---

[5] *See id.* for full exclusions details.

arising out of or related to Defendant's disclosure of its Michigan customers' magazine subscription information. *See* SA ¶¶ 1.27-1.29 for full release language.

**Notice and Administration Expenses.** The SF will be used to pay the cost of sending the Notice set forth in the SA and any other notice as required by the Court, as well as all costs of administration of the Settlement. SA ¶¶ 1.30-31, 1.34.

**Service Award.** In recognition of her efforts on behalf of the SC, Defendant agrees that Plaintiff Moeller may receive, subject to Court approval, a service award of $5,000 from the SF, as appropriate compensation for her time, effort, and leadership as class representative. SA ¶ 8.3; *see also* Decl. ¶¶ 26-29 (detailing same); *Westley v. CCK Pizza Co., LLC*, 2019 WL 5653403, at *3 (E.D. Mich. Oct. 31, 2019) (Ludington, J.) (approving $5,000 service award in similar circumstances).

The requested award is equal to or less than service awards previously approved in this District in other PPPA cases. *See, e.g.*, *Kinder v. Meredith Corp.*, No. 1:14-cv-11284 ECF No. 81, PageID.2771 (E.D. Mich. May 18, 2016) (approving $10,000 award, each claimant received roughly $50); *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809 ECF No. 36 PageID.1957-58 (E.D. Mich. Aug. 13, 2022) (approving $5,000 award in PPPA case, with roughly $50 for each claimant); *see also* Fairness Hearing Transcript at 8:6-17, Exhibit B hereto.

**Attorneys' Fees and Expenses.** As part of the SA, Defendant has agreed that Class Counsel are entitled to reasonable attorneys' fees in an amount to be

determined by the Court by petition. Class Counsel has agreed to limit its request for fees, costs, and expenses to 35% of the SF, with no consideration from Defendant, and Defendant may challenge the amount requested. SA ¶¶ 1.34, 8.1; *see also infra* § VI.A (listing PPPA cases where fee requests of 35% or more were approved).

## IV.  THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION FOR SETTLEMENT PURPOSES

Before granting preliminary approval of the proposed Settlement, the Court must determine that the proposed settlement class is appropriate for certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements. FRCP 23(a); *see Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Also, because Plaintiff seeks certification under Rule 23(b)(3), she must demonstrate that common questions of law or fact predominate over individual issues and that a class action is the superior device to adjudicate the claims. *Amchem*, 521 U.S. at 615-16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). As explained below, the proposed Settlement Class satisfies all of the Rule 23(a) and 23(b)(3) prerequisites, and thus, should be certified.

In the only PPPA case to reach decision on a contested class certification motion, Judge Steeh granted certification. *See Coulter-Owens v. Time, Inc.*, 308

F.R.D 524 (E.D. Mich. 2015). And similar classes have been certified for settlement purposes in other PPPA cases. The proposed SC here likewise should be certified.

## A.  The Numerosity Requirement Is Satisfied

Numerosity is met when joining a large number of plaintiffs in one case would be impracticable. FRCP 23(a)(1); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Though there is no fixed number determining impracticability, "[i]n most cases, a class in excess of forty members will do." *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D. 301, 310 (E.D. Mich. 2008). Only a reasonable estimate is required. *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 520 (E.D. Mich. 2013). According to Defendant's records, there are roughly 13,033 persons in the  SC. Decl. ¶ 15. Thus, joinder would be impractical and, thus, numerosity is satisfied.

## B.  The Commonality Requirement Is Satisfied

Commonality is satisfied under Rule 23(a)(2) when there are questions of law or fact common to the class—the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). And even a single question will do. *See Whirlpool*, 722 F.3d at 582-83.

Here, Plaintiff alleges that all class members' claims hinge on two common questions, one factual and one legal: (1) whether Defendant disclosed its customers' protected personal reading information to third parties between 12/24/15 and 7/30/16; and (2) whether such disclosures violated the PPPA. Plaintiff contends that

both can be answered on a class-wide basis with common proof which will drive the litigation forward. *See, e.g.*, *Parker v. Time Warner Ent. Co., L.P.*, 239 F.R.D. 318, 329 (E.D.N.Y. 2007) (in a case about disclosure of plaintiff's statutorily-protected information without proper notification, commonality found where claims were based on same legal theory and factual question). Numerous courts have certified PPPA, finding commonality satisfied. *See*, *Coulter-Owens*, 308 F.R.D. at 532-34 (litigation found to be "driven by issues that are common" to the entire class).

Given that there are multiple questions of law and fact common to members of the Settlement Class, the commonality requirement is satisfied.

### C. The Typicality Requirement Is Satisfied

Typicality requires that a class representative has claims that are typical of those of other class members. FRCP 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Am. Med. Sys.*, 75 F.3d at 1082. "Typicality may be presumed when the plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *Gilkey v. Cent. Clearing Co.*, 202 F.R.D. 515, 524 (E.D. Mich. 2001). In other words, when the basis of the suit is the defendant's systematic business practices towards the named plaintiff and the members of the proposed class, typicality is satisfied.

10

Plaintiff alleges that Defendant's disclosure of her subscription information was part of its standard business practice of disclosing its customers' subscription information to third parties without consent. SAC ¶¶ 1-2, 5-8, 41-48. And this was true for that of all SCMs, who had their information disclosed to the same third parties and for the same purpose—and that these practices thus violated the PPPA. And to redress such violations, the PPPA authorizes each SCM to recover the same statutorily-set damages ($5,000). Thus, Plaintiff's pursuit of her own claims here will necessarily advance the interests of the SC, satisfying the typicality requirement. *See, e.g.*, *Coulter-Owens*, 308 F.R.D. at 534-35; *Kinder*, 2016 WL 454441, at *1.

## D.  The Adequacy Requirement Is Satisfied

Class representatives under FRCP 23(a)(4) must fairly and adequately protect the interests of the class. In order to do so, "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Int'l Union v. Ford Motor Co*., 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006). The representative must be part of the class, possess the same interest, have suffered the same injury, and seek the same type of relief as other class members. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007).

In this case, the SAC alleges that Plaintiff—like each SCM—purchased a magazine subscription from Defendant while residing in Michigan and had her

subscription information disclosed to third parties without her consent. SAC ¶¶ 9, 41-48. Thus, Plaintiff and SCMs have the exact same interest in recovering the statutory damages to which they are entitled under the PPPA. As such, Plaintiff does not have any interest antagonistic to those of the proposed Settlement Class.

Likewise, proposed Class Counsel have extensive experience in litigating similar class actions. Decl. ¶¶ 17-19. They regularly engage in consumer privacy cases, have the resources necessary to prosecute this case, and have frequently been appointed lead class counsel. *Id.*; *see* Firm Resumes (attached to Decl. as Exs. 2-4); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) (Bursor & Fisher "have experience litigating consumer claims" being "appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries"); *Luczak v. Nat'l Beverage Corp.*, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018) (Hedin Hall LLP "has extensive experience in class actions."); *Fox v. Cty. of Saginaw*, 2020 WL 6118487, at *11 (E.D. Mich. Oct. 16, 2020) ("counsel have substantial experience litigating class actions").

Class Counsel have devoted substantial resources to the prosecution of this action by investigating Plaintiff's claims and that of the SC, obtaining, reviewing and analyzing discovery, participating in a private full-day mediation with Judge Rosen, and ultimately, negotiating a settlement that provides for an outstanding per-class member recovery in a PPPA case, despite the substantial litigation risk that was

present pertaining to the statute of limitations, as well as additional risks on the merits and class certification. Decl. ¶¶ 4-16. In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to work diligently on behalf of the SC throughout the settlement administration process. *Id.*

Because Plaintiff and proposed Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

**E.  The Proposed Settlement Class Meets Rule 23(b)(3) Requirements**

After meeting the prerequisites of Rule 23(a), a plaintiff seeking class certification must also show that the action qualifies under at least one of the categories outlined in Rule 23(b). FRCP 23(b); *Merenda*, 296 F.R.D. at 535. Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. FRCP 23(b)(3). As explained below, the proposed Settlement Class meets these requirements.

**1.  Common Questions Predominate**

FRCP 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 349-60, and whether the proposed class is "sufficiently cohesive to warrant

adjudication by representation." *Amchem*, 521 U.S. at 623. The Rule 23(b)(3) predominance requirement is akin to the commonality requirement Rule 23(a) "in that both require that common questions exist, but [Rule 23](b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 61 (E.D. Mich. 2016). In other words, where commonality is satisfied when there is a single factual or legal question common to the class, the "predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). As such, "cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Id.*

Here, Defendant's alleged common course of conduct presents multiple questions of law and fact that are central to liability, predominating over any issues affecting individual class members. Thus, courts have regularly found common questions to predominate over individual issues in the course of approving PPPA settlements. *See, e.g.*, *Coulter-Owens*, 308 F.R.D. at 536. Defendant engaged in a single course of conduct with respect to all members of the SC, so their claims "will prevail or fail in unison"—thus, predominance is met. *Whirlpool*, 722 F.3d at 859.

## 2. A Class Action Is a Superior Mechanism

A class action is also the superior means of adjudicating this case because it "achieve[s] economies of time, effort and expense and promote[s] . . . uniformity of

decision as to persons similarly situated." *Amchem*, 521 U.S. at 615. A class action is preferred over small individual suits because it provides a mechanism through which individuals who may not otherwise have the opportunity to seek redress through litigation. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012). Claims alleging a standard course of conduct are particularly well-suited for class certification because they facilitate efficiency and uniformity. *Id*. As held in *Coulter-Owens*, "it makes sense to proceed as a class action and address the issues one time rather than [in] potentially hundreds of separate cases." 308 F.R.D. at 537.

Here, all questions necessary to determine violation of the PPPA are common to all SCMs. As such, a class action is a much more efficient use of judicial and party resources than multiple actions. *See In re Cardizem*, 200 F.R.D. at 326. Absent a class action, members of the SC would almost certainly find the individual costs of litigation to be prohibitive. Indeed, no other member of the proposed SC has brought any PPPA claims against Defendant; thus, "there is no indication that any class member wants to individually control his or her own separate action." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 408 (E.D. Mich. 2012).

In addition, many members of the proposed SC may not even be aware of the claim that Defendant disclosed their protected information to third parties. Where consumers are unlikely to discover (and vindicate) injuries absent certification of a class, class treatment is superior to the alternatives. *Young*, 693 F.3d at 545-46.

Therefore, because common questions predominate and a class action is the superior method, maintenance of this action as a class action is appropriate.

## V. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Under FRCP 23(g)(1)(B), "a court that certifies a class must appoint counsel … [to] fairly and adequately represent the interests of the class." The Court considers proposed class counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. FRCP 23(g)(1)(A)(i)–(iv).

As discussed, proposed Class Counsel have extensive experience in prosecuting consumer class actions in general, and privacy class actions specifically. *See* § IV.D, *supra*. And as a result of their zealous efforts in this case, they secured an extremely favorable automatic per class member recovery in this PPPA case. Thus, the Court should formally appoint proposed Class Counsel as Class Counsel.

## VI. PRELIMINARY SETTLEMENT APPROVAL IS APPROPRIATE

Settlement of class action suits is favored. *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The first step  is a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D. Mich.

Aug. 2, 2010). A court makes an "initial evaluation" of the fairness of the proposed

settlement. *Manual for Complex Litigation* § 21.632 (4th ed. 2004).

FRCP 23(e)(2) provides factors for the Court to determine if a settlement is

"fair, reasonable, and adequate," examining whether: (A) class representatives and

class counsel have adequately represented the class; (B) the proposal was negotiated

at arm's length; (C) the relief provided for the class is adequate, reviewing: (i) the

costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed

method of distributing relief to the class, including the processing of class-member

claims; (iii) the terms of any proposed attorney's fee, including timing of payment;

and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the

proposal treats class members equitably relative to each other. FRCP 23(e)(2).

In addition, the Sixth Circuit has laid out its own factors to consider. *See UAW*

*v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). They are: "(1) the risk of

fraud or collusion; (2) the complexity, expense and likely duration of the litigation;

(3) the amount of discovery engaged in by the parties; (4) the likelihood of success

on the merits; (5) the opinions of class counsel and class representatives; (6) the

reaction of absent class members; and (7) the public interest." *Id.*

## A. The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval

This Settlement easily satisfies the Rule 23(e)(2) factors.

<u>First</u>, Plaintiff and Class Counsel have adequately represented the class,

securing an outstanding per-class member recovery. *See* Introduction, *supra*.

Second, the Settlement was negotiated at arm's-length through a neutral after exchanging information sufficient to assess the strengths and weaknesses. *See supra*.

Third, the relief is adequate. The SA provides for the receipt of cash payments of roughly $248 for SCMs without even filing a claim form. SA ¶ 2.1. Attorneys' fees and costs are consistent with other PPPA settlements in this District. *See supra*.

Fourth, the proposed Settlement treats SCMs equitably to each other as every SCM will receive an identical *pro rata* cash payment under the Settlement. SA ¶ 2.1.

Finally, all terms affecting the SC are contained within the SA. Out of an abundance of caution, Plaintiffs identify that the former named plaintiffs—Custard, Vogt, and Norman—have each signed modest individual settlement agreements and dismissed their individual claims. (SA Recitals ¶ C.)[6]

---

[6] Rule 23(e)(2) requires the identification of "any agreement made in connection with the settlement." The SC proposed here and reflected in the SAC is narrower than the ones originally pleaded, and none of the dismissed Plaintiffs are members of the SC. Accordingly, the individual settlements have no effect on the SC because they only "release . . . individual claims . . . that [are not presented here] for class treatment." *Rowe v. E.I. DuPont de Nemours & Co.*, 2011 WL 3837106, at *5 (D.N.J. Aug. 26, 2011) (reviewing class representatives' agreements to dismiss individual claims, and confirming they did not present any "evidence of collusion or threat of conflict"). Further, none of these settlements are taken away from the SF, none are "predicated . . . on the Court's approval of the class settlement or otherwise implicate the class settlement," and none provide Plaintiff Moeller—the proposed representative of the Settlement Classes—with any additional relief above what every other SCM stands to recover. *See id.* In short, apart from being a necessary step in reaching the class Settlement, the dismissed Plaintiffs' individual settlements have no detrimental impact on the relief made available to the SC.

**B. The Sixth Circuit's *UAW* Factors Weigh in Favor of Preliminary Approval**

All seven *UAW* factors favor approval or, at least, are neutral.

**1. There Is No Risk of Fraud or Collusion.**

The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at 631. "Courts presume the absence of fraud or collusion in class action settlements." *Leonhardt v. AvrinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008). Here, a non-collusive settlement was reached through arm's-length negotiations via a neutral. *See Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy.").

**2. Litigation Through Trial Would Be Complex, Costly, and Long.**

The second *UAW* factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW*, 2006 WL 891151, at *17.

Here, the Parties engaged in informal discovery, discussed dispositive motions, and held a private mediation. Decl. ¶¶ 6-11, 13. Absent a settlement, further discovery, dispositive motions, and depositions would follow. Defendant indicated that it would continue to assert numerous defenses to both class certification and the merits, including arguments that the pleadings fail to state a claim, that the case is

time-barred by the statute of limitations, and that the PPPA does not prohibit its conduct as alleged. Class Counsel is also aware that Defendant would prepare a competent defense at trial and would appeal any adverse result at trial (and any order certifying a class). *Id.* ¶ 22. This would be lengthy and expensive litigation.

Rather than pursuing protracted and uncertain litigation, Plaintiff and her counsel negotiated a SA that provides immediate, certain, and meaningful relief. The second factor weighs in favor of finding the Settlement fair, reasonable, and adequate. *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006).

### 3. Discovery Has Allowed the Parties to Resolve the Case Responsibly.

The third factor is "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631. Prior to filing, Plaintiff's counsel conducted a wide-ranging investigation into Defendant's practices, described *supra*, and obtained several key documents evidencing those practices. *See* Decl. ¶ 5. Moreover, in connection with the Parties' settlement negotiations, Plaintiff obtained wide-ranging discovery from Defendant on issues pertaining to class certification and the merits. *Id*. ¶¶ 11-12.

This information and material enabled Plaintiff and her counsel to properly assess the strengths and weaknesses of the claims and defenses and to negotiate a Settlement that is fair, reasonable, and adequate. *Id.* ¶ 11. Class Counsel's experience in similar cases, and the efforts made by counsel on both sides, confirms that they are sufficiently well apprised of the facts here and the viability of their respective

cases to make an intelligent analysis of the proposed settlement. Accordingly, the third factor weighs in favor of finding the Settlement fair, reasonable and adequate.

**4.  Plaintiff Would Face Real Risks if the Case Proceeded.**

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. Although Plaintiff believes her case is strong, it is not without risk. Defendant has made clear that, absent a settlement, it will defend the case vigorously and move for summary judgment and contest class certification. *See* § VI.B.2, *supra*. The Court has not yet certified the proposed Class and the Parties anticipate that such a determination would only be reached after lengthy discovery and briefing. Defendant would likely argue that individual questions preclude class certification, that a class action is not a superior method, and that a trial would not be manageable. And even if the Court certified a class, Defendant would likely challenge certification through a Rule 23(f) application and then move to decertify.

The risk of losing on the merits, the risks of losing class certification, and maintaining certification through trial, were all significant hurdles to obtaining class-wide relief in this case. The Settlement eliminates this risk, as well as the attendant expense and delay. Accordingly, the fourth factor also favors preliminary approval.

**5. Proposed Class Counsel and Class Representative Support the Settlement**

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel

is entitled to significant weight, and supports the fairness of the class settlement." *UAW*, 2008 WL 4104329, at *26. Here, both proposed Class Counsel and Class Representative support the Settlement. *See* Decl. ¶¶ 21, 23. This *UAW* factor, therefore, favors preliminary approval.

### 6. The Reaction of Absent Class Members.

The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. Notice has not yet been disseminated, and the SC has accordingly not yet had an opportunity to voice any opposition to (or support for) the Settlement. Nonetheless, Plaintiff and Class Counsel strongly support the Settlement, which they believe is fair, reasonable, and adequate and in the best interest of the SC. Accordingly, the sixth factor weighs in favor of preliminary approval.

### 7. The Settlement Serves the Public Interest.

The seventh and final *UAW* factor is "the public interest." *UAW*, 497 F.3d at 631. Settlements may serve the public interest by advancing a statute's goals or by conserving judicial resources. *See In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). The Settlement here accomplishes both.

First, "[t]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Id.* Further, when individual class members seek a relatively small amount of statutory damages,

"[e]conomic reality dictates that [their] suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974). Here, if the Settlement does not receive the Court's final approval, the Parties anticipate that complex and lengthy litigation would follow. By avoiding the type of litigation that can needlessly consume a court's time and money, the Settlement furthers the public interest.

Second, the Settlement also serves the public interest by furthering the objectives of the Michigan legislature in enacting the PPPA. The PPPA recognizes that "one's choice in videos, records, and books is nobody's business but one's own." House Legis. Analysis Section, H.B. No. 5331. Class action litigation safeguards the privacy of readers under the PPPA, especially because some consumers may be unaware of the data sharing practices alleged here (i.e., that Defendant disclosed its customers' personal reading information without their consent). This factor therefore supports preliminary approval.

Thus, all of the *UAW* factors weigh in favor of approval. Because the settlement on its face is fair, reasonable, and adequate, and not a product of collusion, the Court should grant preliminary approval.

## VII.  THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

"For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

FRCP 23(c)(2)(B); *see also Eisen*, 417 U.S. at 173. Further, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FRCP 23(e)(1)(B). The substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* FRCP 23(c)(2)(B). Notice is "adequate if it may be understood by the average class member." *Newberg*, § 11:53 at 167.

Here, the Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and Due Process. First, the Settlement Administrator ("Administrator") will send direct notice by U.S. mail to all SCMs for whom the Administrator has been able to identify a postal address which it concludes has a reasonable likelihood of reflecting the current residence of such SCM. SA ¶ 4.1(b)(ii); SA Ex. B. If more than one postal address is identified, the Administrator will send the notice by U.S. mail to both addresses, and each notice will indicate the address to which the SCM's cash award check will be sent. *Id.* ¶ 4.1(b)(iii). Next, for any SCM for whom the Administrator is unable to identify at least one postal address, the Administrator will send notice via email. *Id.* ¶ 4.1(b)(iv); SA Ex. A. Further, the Administrator will establish a Settlement Website that shall contain the

"long form notice" (*see* SA Ex. C), as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online (if needed for any unidentified class members), or an updated postal address. *Id*. ¶ 4.1(c). Finally, the Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by CAFA, 28 U.S.C. § 1715. *Id*. ¶ 4.1(e).

## VIII.  CONCLUSION

Based on the above, Plaintiff respectfully requests that the Court grant his Unopposed Motion for Preliminary Approval of the Settlement. A Proposed Order granting preliminary approval, certifying the Settlement Class, appointing Class Counsel, and approving the Proposed Notice of Settlement is submitted herewith.

Dated: November 21, 2022                    Respectfully submitted,

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
epm@millerlawpc.com
Sharon S. Almonrode (P33938)
ssa@millerlawpc.com
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Philip L. Fraietta (P85228)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150

Frank S. Hedin
fhedin@hedinhall.com
Arun G. Ravindran
aravindran@hedinhall.com
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107

*Proposed Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, E. Powell Miller, an attorney, hereby certify that on November 21, 2022, I served the above and foregoing ***Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

<u>/s/ E. Powell Miller</u>
E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste 300
Rochester, MI 48307
Tel: 248.841.2200