UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ELIZABETH MOELLER, individually and on
behalf of all others similarly situated,

        Plaintiff,                              Case No. 1:22-cv-10666

v.                                                Honorable Thomas L. Ludington
                                                          United States District Judge

THE WEEK PUBLICATIONS, INC.,

        Defendant.
_____/

**OPINION AND ORDER (1) GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, (2) CERTIFYING SETTLEMENT CLASS, (3) APPOINTING CLASS REPRESENTATIVE, (4) APPOINTING CLASS COUNSEL, (5) APPROVING NOTICE PLAN, (6) APPOINTING CLAIMS ADMINISTRATOR, (7) DIRECTING PUBLICATION OF NOTICE, AND (8) SETTING SCHEDULING ORDER**

      In this class-action suit brought under Michigan's Preservation of Personal Privacy Act (PPPA), Lead Plaintiff Elizabeth Moeller alleges Defendant The Week Publications improperly disclosed "detailed information" about her subscription to *The Week*, leading to "a barrage of unwanted junk mail." ECF No. 15 at PageID.1086.

      Following successful mediation, Lead Plaintiff filed a motion for preliminary approval of the class-action settlement. She seeks (1) class certification for settlement purposes; (2) appointment of Lead Plaintiff's attorneys as class counsel for settlement purposes; (3) appointment of Lead Plaintiff as class representative for settlement purposes; (4) preliminary approval of the Proposed Settlement Agreement; and (5) approval of the proposed notice plan.

      Although the first version was rejected for providing Lead Plaintiff with more than 2000% of the relief that the unnamed members of the Class would receive, the Parties modified the Agreement, and it now satisfies all the requirements for preliminary approval.

## I.

In December 2021, former Lead Plaintiff Colin Custard sued Defendant for violating Michigan's PPPA, alleging that, on or before July 30, 2016, Defendant disclosed information about its subscribers' personal reading history and habits without their consent. ECF No. 1 at PageID.4–5; *see also* ECF No. 11. In November 2022, Lead Plaintiff Elizabeth Moeller replaced Custard in a Second Amended Complaint making the same allegations. ECF No. 15.

After successful mediation in October 2022, the Parties finalized the Settlement Agreement and Lead Plaintiff filed an unopposed motion for preliminary approval of it under Federal Rule of Civil Procedure 23(e). ECF No. 17.

But the motion and the Agreement were denied without prejudice because the proposed incentive award misaligned the interests of the Lead Plaintiff and the unnamed members of the Class, raising concerns about the adequacy of the Lead Plaintiff's representation and the adequacy of the relief. *See generally Moeller v. Wks. Publ'ns, Inc.*, No. 1:22-CV-10666, 2022 WL 17718416 (E.D. Mich. Dec. 15, 2022).

Six days later, Lead Plaintiff filed a "Revised Unopposed Motion for Preliminary Approval of Class Action Settlement." ECF No. 22. In sum, Lead Plaintiff's $5,000 service award will be reduced to $1,000, *id.* at PageID.1846, and the $4,000 difference will be "distributed *pro rata* among Settlement Class Members," *id.* at PageID.1847 (citing ECF No. 17-2 at PageID.1701). And "the remainder of her originally filed Motion for Preliminary Approval" is "incorporate[d] by reference." *Id.* at PageID.1849 (citing ECF No. 17). In the interest of efficiency, Lead Plaintiff's first motion and proposed agreement are referenced throughout this Order as the Agreement, incorporating Lead Plaintiff's "revised" motion. *Compare* ECF No. 17, *and* ECF No. 17-2, *with* ECF No. 22.

The Agreement provides payments to the members of the proposed Settlement Class, release of claims, class-notice procedures, settlement administration, attorney's fees, service awards, and termination of the Agreement. *See generally* ECF No. 17-2.

Under the terms of the Agreement, Defendant would deposit $5,082,870 into the Settlement Fund, id. at PageID.1632, and each member of the Settlement Class would automatically receive approximately $248, ECF No. 22 at PageID.1848.

## II.

The claims of "a class proposed to be certified for purposes of settlement[] may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e).

The question at the preliminary-approval stage is "simply whether the settlement is fair enough" to begin the class-notice process. *Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020). For preliminary approval, Rule 23(e) requires the parties to "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." FED. R. CIV. P. 23(e)(1)(A). "The court must direct notice" of a proposed settlement "to all class members who would be bound" by it if "the court will likely be able to approve the proposal under Rule 23(e)(2)[] and certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B).

After preliminary approval, notice, and time for objections, the proposed settlement may be finally approved "only after a hearing and only on finding that it is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).

## III.

### A.  RULE 23 CLASS CERTIFICATION

Lead Plaintiff's proposed Settlement Class includes:

> All people who purchased a subscription directly from the publisher of *The Week* for delivery to a Michigan street address, and who subscribed to such publication between December 17, 2015, and July 30, 2016.

ECF No. 17-2 at PageID.1682. The Class excludes

> (1) all people whose subscription information was not disclosed to third parties, including people who were on Defendant's "do not rent list";
> (2) any judge presiding over this case and members of their families;
> (3) Defendant;
> (4) Defendant's subsidiaries, parent companies, successors, and predecessors;
> (5) any entity, including its current and former officers, directors, agents, attorneys, and employees, in which Defendant or its parents have a controlling interest;
> (6) people who properly executes and timely files a request to be excluded from the Class; and
> (7) the legal representatives, successors, and assigns of any excluded people.

*Id.* at PageID.1682–83.

As explained below, the Class will be certified under Rules 23(a) and (b).

**1. Rule 23(a) Requirements**

i. Numerosity

The Class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Although "there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006).

The Class satisfies numerosity. It includes 13,033 people who purchased a subscription to one of Defendant's publications. ECF No. 17 at PageID.1640. This "sheer" volume satisfies numerosity. *See Barry v. Corrigan*, 79 F. Supp. 3d 712, 731 (E.D. Mich. 2015) (holding that "sheer number of" 4,562 people independently satisfied numerosity, even though "number of potential class members is not dispositive"), *aff'd sub nom. Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016).

ii. Commonality

The Class must share common questions of law or fact. FED. R. CIV. P. 23(a)(2). Commonality requires "a common contention" that, if resolved, would resolve claims of all class

members "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A common question of law or fact exists if all the members of the Class suffered the same injury. *Id.* at 349–50.

Lead Plaintiff relies on the common questions of whether Defendant disclosed subscribers' protected personal reading information between December 24, 2015 and July 30, 2016, and whether such disclosures violated Michigan's PPPA. ECF No. 17 at PageID.1640. These factual questions are common to all the members of the Class. Therefore, they are capable of class-wide resolution, satisfying commonality. *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 533–34 (E.D. Mich. 2015) (finding commonality is satisfied if "the litigation is driven by issues that are common to the entire putative class").

### iii. Typicality

"[T]he claims or defenses of the representative parties [must be] typical of the claims and defenses of the class." FED. R. CIV. P. 23(a)(3). Typicality is satisfied if the representative's claim "arises from the same [transaction or occurrence as] the claims of other class members, and [they] are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007).

The claims of Lead Plaintiff and the Class arise from the same alleged "standard business practice" of Defendant: disclosing its subscribers' personal reading information. ECF No. 17 at PageID.1641–42. Thus, resolving one plaintiff's claims would resolve them for the Class, satisfying typicality. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) ("[A]s goes the claim of the named plaintiff, so go the claims of the class.").

### iv. Adequacy of Representation

Finally, "the representative parties [must] fairly and adequately protect the interest of the class." FED. R. CIV. P. 23(a)(4). Adequacy is governed by two criteria: "1) the representative must

have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).

Lead Plaintiff, the representative party, satisfies both criteria. She has the same claims as the Class: that Defendant disclosed her personal reading information to third parties without her consent. ECF No. 17 at PageID.1642–43. She has also participated in the case by providing information and documents to her attorneys. *See* ECF No. 20-1 at PageID.1834. And the proposed incentive award does not misalign the interests of Lead Plaintiff and the Class. ECF No. 22 at PageID.1849 (proposing a $1,000 "service award" to lead plaintiff); *see also Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (expressing a "sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain").

### 2. Rule 23(b) Requirements

The Class must also satisfy one of the three requirements of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

Lead Plaintiff contends the Class satisfies Rule 23(b)(3), which permits class actions if (1) the common questions of law and fact predominate over any questions affecting only individuals and (2) the class-action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3).

#### i. Common questions of law or fact predominate

Predominance is satisfied if the Class's individual questions of law or fact "are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).

Here, the injury of each member of the Class—the disclosure of their personal reading information—was the result of Defendant's alleged "single course of conduct with respect to all" Class members. ECF No. 17 at PageID.1645. In this way, all the claims of the entire Class involve the same questions of law and fact, satisfying predominance. *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." (citation omitted)).

ii. Class action is the superior method to adjudicate the controversy fairly and effectively

Superiority "is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Lab'ys*, 287 F.R.D. 402, 407 (E.D. Mich. 2012) (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006)). A class action is superior if it would "vindicate[] 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *See Amchem*, 521 U.S. at 617 (citation omitted).

A class action is the best way to vindicate the Class's rights under these circumstances. Because the disclosure issues predominate, it would be impractical for the members of the Class to individually sue the same defendant for disclosure of their personal reading information. *See In re Sonic Corp. Customer Data Breach Litig.*, No. 1:17-MD-02807-JSG, 2020 WL 6701992, at *6 (N.D. Ohio Nov. 13, 2020) (finding that class action was superior because all class members suffered same injury—the disclosure of personal information—from the same underlying same data breach). For these reasons, superiority is satisfied.

### B. APPOINTMENT OF ATTORNEYS AS CLASS COUNSEL

After certifying a class, the court must appoint class counsel. FED. R. CIV. P. 23(g)(1). Before appointing class counsel, the court must consider:

> (1) the work counsel has done in identifying or investigating potential claims in the action;

> (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (3) counsel's knowledge of the applicable law; and
> (4) the resources that counsel will commit to representing the class.

*Id.*

Lead Plaintiff proposes five attorneys from three different firms as candidates for Class counsel. ECF No. 17 at PageID.1633. All candidates have been involved in this case from the beginning. *See* ECF No. 1 at PageID.24–25 (showing all candidates signed the original complaint). Moreover, all candidates have invested many hours investigating the claims in this case and have extensive experience serving as class counsel in other cases. *See* ECF No. 17-2 at PageID.1665–68 (outlining experience and achievements of proposed class counsel); *see also id.* at PageID.1749–80 (outlining qualifications of Bursor & Fisher, P.A. attorneys); *id.* at PageID.1782–85 (outlining qualifications of Hedin Hall LLP attorneys); *id.* at PageID.1787–94 (outlining qualifications of The Miller Law Firm attorneys). This Court is satisfied that all candidates would be adequate under Rule 23(g).

Although all the candidates are adequate, "the court must appoint *the* applicant best able to represent the interests of the class." FED. R. CIV. P. 23(g)(2) (emphasis added); *accord D.D. ex rel. B.N. v. Mich. Dep't of Health & Hum. Servs.*, No. 1:18-CV-11795, 2022 WL 16680727, at *4 (E.D. Mich. Nov. 3, 2022) (noting that the text of Rule 23(g) requires the appointment of *one* firm or attorney as class counsel).

Bursor & Fisher could best represent the Class. It has extensive experience with PPPA cases. S*ee* ECF No. 17-2 at PageID.1665–66. And the only attorney who signed the Agreement is Philip L. Fraietta, demonstrating that Bursor & Fisher was most directly involved in settling the case and drafting the Agreement. *See id.* at PageID.1710.

### C. PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

There are two steps for approving class settlements: "(1) preliminary approval of the settlement and the content and method of class notice; and (2) final approval after notice and a fairness hearing." *Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010) (citing *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

At the preliminary-approval stage, the issue is whether the Agreement "is fair enough . . . to expend the effort and costs associated with sending potential class members notice and processing opt-outs and objections." *Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020). The Agreement should be preliminarily approved if it "(1) 'does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys,' and (2) 'appears to fall within the range of possible approval'" at the final-approval stage. *Sheick*, 2010 WL 3070130, at *11 (quoting *In re Inter–Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001)).

At the final-approval stage, the Agreement will be approved if it is fair, reasonable, and adequate. FED R. CIV. P. 23(e)(2). To that end, factors from the Sixth Circuit and the Federal Rules of Civil Procedure guide the analysis.[1]

As explained below, the Agreement is fair, reasonable, and adequate and will be preliminarily approved to begin the notice process and objection period.

---

[1] The Federal Rules of Civil Procedure were amended in 2018 to include four factors for approving settlement agreements. *See* FED. R. CIV. P. 23(e). Before this amendment, the Sixth Circuit developed seven factors. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). But the advisory committee made clear that the 2018 amendment did not replace any such factors. *See* FED. R. CIV. P. 23 advisory committee's note to 2018 amendment ("The goal of this amendment is not to displace any factor [a circuit provided], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

### 1. Rule 23(e) Factors

Four factors govern whether the Agreement is "fair, reasonable, and adequate":

(1) whether the class representatives and class counsel have adequately represented the class,
(2) whether the proposal was negotiated at arm's length,
(3) whether the relief provided for the class is adequate, and
(4) whether the proposal treats class members equitably relative to each other.

FED R. CIV. P. 23(e).

#### i. Adequate representation

Lead Plaintiff and Class Counsel have adequately represented the Class. *See* discussion *supra* Section III.A.1.iv; *see also* 4 *Newberg and Rubenstein on Class Actions* § 13:48 (6th ed.), Westlaw (database updated June 2022) (noting that the first Rule 23(e) factor is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively").

#### ii. Arm's length negotiation of settlement

The parties negotiated the Agreement at arm's length. After conducting informal discovery, the parties settled through a neutral mediator, Retired Chief Judge Gerald E. Rosen, and there is no evidence of fraud or collusion. *See* ECF No. 17 at PageID.1632, 1649. Therefore, the second factor is satisfied. *See Hilson v. Kelly Servs. Inc.*, No. 2:15-CV-10803, 207 WL 279814, at *6 (E.D. Mich. Jan. 23, 2017) (finding that settlement agreement was negotiated at arm's length because procedural history reflected noncollusive negotiations, informal and formal discovery, and multiple mediation sessions).

#### iii. Adequate relief

The adequacy of relief considers:

(1) the costs, risks, and delay of trial and appeal;
(2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(3) the terms of any proposed attorney's fee, including timing of payment; and

(4) any agreement required to be identified under Rule 23(e)(3).

FED R. CIV. P. 23(e)(2)(C).

The relief sought is adequate. First, the Agreement is identified. ECF No. 17-2. Second, Lead Plaintiff acknowledges that more litigation would be complex, costly, and likely continue for several years with no guarantee of relief. ECF No. 17 at PageID.1650–52. Third, the proposed method of distributing relief to the Class, including the processing of its claims, is effective because it ensures that each member of the Class will automatically obtain relief. *See* ECF No. 17-2 at PageID.1693–97 (outlining administration of awards to class members). Finally, the proposed attorney's fees will not exceed 35% of the Settlement Fund, *see id.* at PageID.700, which is adequate, *see Garner Props. & Mgmt. v. City of Inkster*, 2020 WL 4726938, No. 17-cv-13960, at *10 (E.D. Mich. Aug. 14, 2020) (finding that 33% attorney's fees were reasonable).

### iv. Equal treatment of class members

The Agreement treats the members of the Class as relatively equal. It provides each member of the Class with an automatic cash payment of approximately $248.30. ECF Nos. 17-2 at PageID.1632; 22 at PageID.1848. And Lead Plaintiff's incentive award is only $1,000, *see* ECF No. 22 at PageID.1849, so there are no concerns about the incentive award creating inequality, *see Green v. FCA US LLC*, No. 20-13079, 2022 WL 3153777, at *2 (E.D. Mich. Aug. 8, 2022) (noting that lead-plaintiff incentive awards can "create[] a misalignment of the interests of the class and the representatives").

### 2. Sixth Circuit Factors

The Sixth Circuit provides seven factors to determine whether a class settlement is fair, reasonable, and adequate:

(1) the risk of fraud or collusion;
(2) the complexity, expense, and likely duration of the litigation;

    (3) the amount of discovery engaged in by the parties;
    (4) the likelihood of success on the merits;
    (5) the opinions of class counsel and class representatives;
    (6) the reaction of absent class members; and
    (7) the public interest.

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

### i. The risk of fraud or collusion

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) (citing *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)).

No evidence of fraud or collusion exists here. On the contrary, the parties settled with a neutral mediator, *see* ECF No. 17 at PageID.1632, 1649, so this factor favors approval, *see Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.").

### ii. The complexity, expense, and likely duration of litigation

Courts must also consider the complexity, expense, and likely duration of litigation because "the costs, delays[,] and multitudes of other problems" can outweigh the value of the plaintiff's claims. *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008).

Lead Plaintiff acknowledges that continued litigation would be "protracted and uncertain," likely spanning years. ECF No. 17 at PageID.1651. The expense of such litigation could outweigh the value of Plaintiffs' claims, so this factor also favors approval.

### iii. The amount of discovery engaged in by the parties

A settlement is "more likely to be fair and reasonable under the circumstances" if the parties have conducted discovery. *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022) (citing *O'Bryant v. ABC Phones of N.C., Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780, at *14 (W.D. Tenn. Dec. 22, 2020)).

Although the parties did not conduct formal discovery, they have conducted ample informal discovery for Plaintiffs to "adequately assess their case and the desirability of the proposed settlement." *Kritzer v. Safelite Sols., LLC*, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012); *see also Int'l Union*, *United Auto., Aerospace & Agric. Implement Workers v. Gen. Motors Corp.,* No. 07-CV-14074-DT, 2008 WL 2968408, at *26 (E.D. Mich. July 31, 2008) (noting that informal discovery is adequate for class counsel to make an informed decision about the adequacy of a proposed settlement). Lead Plaintiff notes that the information and materials obtained during the litigation "enabled Plaintiff and her counsel to properly assess the strengths and weaknesses of [the Settlement Class's] claims and defenses." ECF No. 17 at PageID.1651. This factor thus favors approval.

### iv. The likelihood of success on the merits

The likelihood of success on the merits "provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011).

Lead Plaintiff has acknowledged the risk of continued litigation, especially the "significant hurdles" to obtain Class relief. ECF No. 17 at PageID.1652. Therefore, this factor favors approval.

### v. The opinions of class counsel and class representatives

"The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008).

Class Counsel supports the settlement. ECF No. 17 at PageID.1652–53. So this factor favors approval too.

### vi. The reaction of absent class members

This factor is neutral because the proposed settlement is in the prenotice stage. *See Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022) (finding that courts cannot evaluate this factor before notice).

### vii. The public interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Invs. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992)).

Settling this 13,033-person class action would further the public interest by providing relief for the entire Class and conserving judicial resources. Settlement also furthers the public interest by "furthering the objectives of the Michigan legislature in enacting the PPPA." ECF No. 17 at PageID.1654. Therefore, this factor favors approval.

**3.**

Because the factors score 10–0–1, the Agreement is fair, reasonable, and adequate and will therefore be preliminarily approved.

## D. APPROVAL OF PROPOSED NOTICE PLAN

After preliminarily approving a settlement, the court must direct notice of the proposed settlement to all class members who would be bound by the proposal. FED. R. CIV. P. 23(e)(1)(B). Because the Class is being certified under Rule 23(b)(3), notice must be "the best notice practicable" and include "individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Notice must also include the following in "plain, easily understood language":

   (1) The nature of the action;
   (2) The definition of the class certified;
   (3) The class claims, issues, or defenses;
   (4) That a class member may enter an appearance through an attorney if the member so desires;
   (5) That the court will exclude from the class any member who requests exclusion;
   (6) The time and manner for requesting exclusion; and
   (7) The binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

The parties' proposed notice plan is in Section 4 of the Agreement, ECF No. 17-2 at PageID.1688–93, and their proposed notice materials are attached as exhibits to it, *id.* at PageID.1715–32. The parties have selected JND Legal Administration as the Claims Administrator responsible for distributing class notice. *Id.* at PageID.1682.

The proposed notice plan is the most practicable way under the circumstances to provide individual notice to the Class. It directs the Claims Administrator to mail notice to the Class members for whom addresses are known, and to email notice to Class members for whom mailing addresses are not known. *Id.* at PageID.1689–90. It also establishes a settlement website that any member of the Class can access. *Id.* at PageID.1690.

The text of the proposed notice satisfies the requirements of Rule 23 and due process. *See generally id.* at PageID.1715–32. The proposed notice states that this is a class-action lawsuit

alleging that Defendant "disclosed its customers' subscription information to third parties, which is alleged to violate Michigan privacy law." *Id.* at PageID.1715, 1719, 1721. It defines the class and discusses the claims and issues of the Class to the extent relevant for settlement notice. *See id.* at PageID.1723–24. And it conspicuously alerts the members of the Class that they may opt out of or object to the Agreement. *Id.* at PageID.1715–16, 1719, 1726–28. Although the notice does not yet include the deadlines to file a claim, to request an exclusion, or to object, it does include spaces to input such information, which will be provided in this Order. *See generally id.* Finally, the proposed notice informs the members of the Class that they are bound by the terms of the Agreement unless they opt out. *Id.* at PageID.1726

Accordingly, the notice plan will be approved and the parties will be directed to begin the Notice Program according to the Agreement on or before February 21, 2023.

As reflected in the Agreement, any member of the Class who wishes to opt out of the Agreement after receiving notice must send a written request to the Claims Administrator, which must be postmarked on or before April 24, 2023, *see* ECF No. 17-2 at PageID.1692–93. Any member of the Class who does not properly and timely opt out will be bound by the terms of the Agreement upon final approval by this Court.

### IV.

Accordingly, it is **ORDERED** that Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, ECF No. 17, as amended by Lead Plaintiff's Revised Unopposed Motion for Preliminary Approval of Class Action Settlement, ECF No. 22, is **GRANTED**.

Further, it is **ORDERED** that the Class is **CERTIFIED** for settlement purposes only.

Further, it is **ORDERED** that the Class is **DEFINED** as "All people who purchased a subscription directly from the publisher of *The Week* for delivery to a Michigan street address, and who subscribed to such publication between December 17, 2015, and July 30, 2016."

Further, it is **ORDERED** that the Class **EXCLUDES** (1) all people whose subscription information was not disclosed to third parties, including people who were on Defendant's "do not rent list"; (2) any judge presiding over this case and members of their families; (3) Defendant; (4) Defendant's subsidiaries, parent companies, successors, and predecessors; (5) any entity, including its current and former officers, directors, agents, attorneys, and employees, in which Defendant or its parents have a controlling interest; (6) people who properly executes and timely files a request to be excluded from the Class; and (7) the legal representatives, successors, and assigns of any excluded people.

Further, it is **ORDERED** that Lead Plaintiff Elizabeth Moeller is **APPOINTED AS CLASS REPRESENTATIVE** for settlement purposes only.

Further, it is **ORDERED** that Bursor & Fisher, P.A. is **APPOINTED AS CLASS COUNSEL** for settlement purposes only.

Further, it is **ORDERED** that the Proposed Settlement Agreement, ECF No. 17-2 at PageID.1673–1713, as amended by ECF No. 22 at PageID.1846–48 (reducing the lead-plaintiff incentive award from $5,000 to $1,000) is **PRELIMINARILY APPROVED**.

Further, it is **ORDERED** that the Proposed Settlement Notice Plan, including the Notice Forms, ECF No. 19-6 at PageID.1715–29 and Claim Form, ECF No. 19-6 at PageID.1731–32, is **APPROVED**.

Further, it is **ORDERED** that JND Legal Administration is **APPOINTED AS CLAIMS ADMINISTRATOR**.

Further, it is **ORDERED** that the Claim Administrator is **DIRECTED** to publish notice according to the Proposed Settlement Notice Plan.

Further, it is **ORDERED** that any member of the Class who wishes to opt out of the Agreement must send a written request to the designated post-office box established by the Claims Administrator, postmarked on or before **April 24, 2023**.

Further, it is **ORDERED** that any member of the Class who does not properly and timely opt out of the Agreement is, upon entry of a final order and judgment approving the Agreement, **BOUND** by all it terms and provisions.

Further, it is **ORDERED** that the following schedule is **ADOPTED**:

| | |
|---|---|
| Defendant to provide contact information of Settlement Class Members to Claim Administrator on or before: | **January 20, 2023** |
| Notice Program Commences on or before: | **February 21, 2023** |
| Notice Program Concludes on or before: | **March 10, 2023** |
| Compliance with CAFA Waiting Period under 28 U.S.C. § 1715(d): | **90 days after appropriate government officials are served with CAFA notice** |
| Postmark deadline for request for exclusion (opt-out) or objections: | **April 24, 2023** |
| Deadline to file Lead Plaintiff's Motion for Final Approval of the Settlement Agreement and Motion for Attorney's Fees, Expenses, and Service Awards: | **May 22, 2023** |
| Postmark / Filing deadline for unidentified members of the Class to file claims | **June 6, 2023** |
| Deadline for Plaintiffs to file any Response to Objections or Supplement to Motion for Final Approval | **June 13, 2023** |
| Deadline for Claims Administrator to file or cause to be filed, if necessary, a supplemental declaration with the court | **June 22, 2023** |

| Final Approval Hearing | June 28, 2023, at 4:00 PM EDT |
|---|---|

**This is not a final order and does not close the above-captioned case**.

Dated: January 6, 2023

        s/Thomas L. Ludington
        THOMAS L. LUDINGTON
        United States District Judge